UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael B. LAIKIN,
Defendant-Appellant.

No. 78–1162.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1978.

Decided Sept. 27, 1978.

Rehearing Denied Nov. 6, 1978.

Melvin B. Lewis, Chicago, Ill., for defendant-appellant.

John A. Nelson, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, and TONE and BAUER, Circuit Judges.

CASTLE, Senior Circuit Judge.

The issue presented by this appeal is whether a perjury conviction under 18 U.S.C. § 1623 may be sustained on a theory that defendant gave inconsistent answers on two occasions when the record indicates that defendant was not asked the same question on the two occasions. We hold that it may not.

1. This transaction is described by the parties as a "work-out" transaction entered into by the Bank to rid its books of $92,000 in bad checks which the Bank considered uncollectible. Mr. Hansen agreed to purchase the bad checks at face value, so he received only $118,000 of the loan in cash, the balance being in the form of the bad checks.

Defendant Michael B. Laikin is a lawyer who represented the University National Bank in a loan transaction with Roland C. Hansen. Mr. Hansen borrowed $210,000 from the Bank, pledging as collateral a number of properties.[1] The two parcels of concern here were assigned a combined collateral value of $40,000 which considerably exceeded the assessed value of the parcels.[2] The two parcels together were insured for a total of $70,000 (Tr. 286). Three weeks after the closing in the above transaction, these two properties were burnt down and the government initiated an investigation into the possibility of arson. It was at this point that a man named Howard Bloom, who had put defendant in touch with Hansen for the loan transaction, approached defendant with the question of whether he had heard Hansen threaten arson at any point during the closing negotiations. Defendant denied hearing any such threat. Bloom then asked defendant whether he might have heard a joke about the properties. Defendant replied that he could not recall but that he could not rule out the possibility of a joke (Tr. 222).

The following month, Bloom called the defendant from the FBI's office. In the ensuing telephone conversation, which was taped by the government, Bloom told defendant that he had been talking with the FBI and just wanted to let him know what he had told them in case the FBI should question defendant. He said that he had told the FBI about Hansen's "joke" concerning the properties "not be[ing] around too long" and then asked defendant whether he recalled such a joke. Defendant responded that he vaguely recalled something to that effect but that it did not stand out like a red light.[3]

2. One parcel was assessed at between $10,000 and $13,000 and the other at between $15,000 and $17,000, so at most the assessed value of the two properties together could not have exceeded $30,000 (Tr. 277).

3. The transcript of the taped telephone conversation is as follows:

> Bloom: I was down ah, with the FBI just a little while ago.

At the grand jury hearing, where defendant is alleged to have committed the perjury, he was asked whether at any time before or during the closing "Mr. Hansen indicated to you with respect to at least one or more of his properties there would be no problem from the bank's standpoint because that property would be liquidated in the future in terms of some sort of a loss or casualty to that property." Defendant replied that he had "no specific recollection *of the statements or the thought* you are asking about" and volunteered that he had previously told Bloom over the phone[4] that he really could not remember whether "that statement" had been made by Hansen.[5]

At a later point in the grand jury hearings, defendant was asked whether he remembered Hansen making a statement such as "don't worry about some of this because there may be a fire or there may be some loss to this property and it's insured and you will get your money right away." Defendant replied that "that statement" had not been made in his presence. (Grand Jury Proceedings 35–36.)

■ Defendant was convicted following a bench trial in the United States District Court for the Eastern District of Wisconsin of knowingly making a false material declaration before a federal grand jury in violation of 18 U.S.C. § 1623. We reverse on the ground that the questions asked of defendant on the two occasions were objectively not the same and hence admitted of different answers consistently with the "literal truth" standard of *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). Defendant may have

> Laikin: oh, okay.
> Bloom: Okay, just so you know what I told the, so, ya know, you don't think I'm, so when they ask you a question, you know what it's all about, so you don't think I'm gonna play a game with ya.
> Laikin: No, all right.
> Bloom: But did you remember they asked me about those two fires on ah Twenty-eighth Street? Twenty-one forty-two.
> Laikin: Um hum.
> Bloom: And twenty-seven thirty-one West McKinley, ya know and Hansen cracked off that *joke* in the conference room by you?
> Laikin: Um hum.
> Bloom: And he said don't worry *those properties ain't, may not be around too long,* ya know, so if they ask you about that, you should acknowledge that fact.
> Laikin: All right.
> Bloom: Ya know.
> Laikin: Um hum.
> Bloom: Ya know if there's any, you were in the room with me and so was your dad.
> Laikin: Yeah I told you that I, I recall vaguely, it didn't ya know, stand out like a red light, but I recall something to that effect.
> Bloom: Yeah, so I just wanted to tell ya that, okay?
> Laikin: Greatly appreciate it.
> Appendix, Item 1, pp. 5–6. (Emphasis added.)

4. Defendant testified at trial that he had confused the telephone conversation with the face-to-face conversation with Bloom (Tr. 257).

5. A transcript of the relevant portion of the grand jury questioning follows:
> Q. Now at one of the—either at the closing or probably more likely at one of the negotiating sessions prior to the completion of the loan, was there a time when in Mr. Bloom and Mr. Hansen's presence, *Mr. Hansen indicated to you that with respect to at least one or more of his properties there would be no problem from the bank's standpoint because that property would be liquidated in the future in terms of some sort of a loss or casualty to that property?*
> A. No, I have—I was asked *that question* by Mr. Walsh when he was in my office about a month ago, something like that. And I really racked my mind and I have no specific recollection *of the statements or the thought that you are asking about.* Some weeks prior to when I met with Mr. Walsh I was asked whether I had heard that, and—by Mr. Bloom, he had called me. And I said I really can't remember.
> It could have been said, you know. I can't say yes and I can't say no. It was a busy time. It was on a Friday, late in the afternoon through the evening when most of the work started on the paper work, and the people were in our office. And we were going back and forth among several rooms. But no, I can't—I can't specifically say that I heard it or I didn't—or didn't hear it.
> Q. You mentioned that Mr. Bloom made a call to you prior to Mr. Walsh's seeing you.
> A. That is correct.
> Q. And inquired as to the same thing that Mr. Walsh inquired as to.
> A. He asked in substance whether I heard *that statement* made in my office, and I said I really don't know. It could have been. It could not have been. I truly don't know. It doesn't stand out, if that's what you are—.
> Appendix, Item 1, pp. 2–3. (Emphasis added.)

himself thought that he was being asked the same question on both occasions, but intent to commit perjury does not constitute perjury. *United States v. Williams,* 536 F.2d 1202, 1207 (7th Cir. 1976).

■ As can be seen from an examination of the question asked of defendant by Bloom in the taped telephone conversation and the question asked by the Government in the grand jury hearings, the two are not the same. Bloom asked defendant whether he remembered Hansen saying something at the closing about the properties "not being around too long," whereas the Government asked defendant whether he remembered a Hansen comment about "loss or casualty" or "fire . . . or some loss" to property. Defendant's admission to a vague recollection of the former but to no recollection of the latter is not necessarily inconsistent. If his recollection were only of some Hansen comment about properties "not being around too long," he spoke the literal truth when he denied any recollection of a comment about loss, casualty, or fire because the Hansen comment he remembered did not necessarily carry any fire overtones.

Defendant may in fact have been aware that the Hansen comment contained a veiled reference to arson and he probably realized that the government was trying to find out whether he remembered any comment at all about the properties, including a comment about the properties "not being around too long." However, the Government did not ask him that precise question, and defendant was not required to answer the unasked question. "The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Bronston v. United States,* 409 U.S. 352, 360, 93 S.Ct. 595, 601, 34 L.Ed.2d 568 (1973). What was said in *Bronston* with respect to the literally true but unresponsive answer holds equally true here:

> Precise questioning is imperative as a predicate for the offense of perjury.

It may well be that petitioner's answers were not guileless but were shrewdly calculated to evade. Nevertheless, . . . any special problems arising from the literally true but unresponsive answer are to be remedied through the "questioner's acuity" and not by a federal perjury prosecution.

*Bronston v. United States,* 409 U.S. 352, 362, 93 S.Ct. 595, 602, 34 L.Ed.2d 568 (1973). The rationale of the *Bronston* case was that an unresponsive answer should put the questioner on notice of the need to pin the witness down with more precise questioning. We are confronted here with the case of a literally true and *responsive* answer. While in such a case the questioner does not have the warning flag of an unresponsive answer to put him on guard, the Government here should have realized that it was not asking defendant the same question as that put to him by Bloom in the telephone conversation, and hence was on notice that defendant's different answer could be literally true. The Government should not at this stage be able to argue around a mistake which it could have easily avoided at the time of questioning by following elementary witness-examining technique.

Because we are able to resolve the case on the basis of the questions asked of defendant on the two relevant occasions, we find it unnecessary to address defendant's other arguments relating to the ambiguity of his answers and the immateriality of his recollection of the telephone conversation to the grand jury investigation.[6]

For the reasons stated, the judgment appealed from is REVERSED.

---

**6.** Defendant also argued that it was improper for the government to question him before the grand jury about the telephone conversation without notifying him of the existence of a tape recording of that conversation. This issue was addressed in a recent *per curiam* opinion by this Court. *United States v. Edelson,* 581 F.2d 1290 at 1292 (7th Cir. 1978).