STATE of Wisconsin, Plaintiff-Respondent,

v.

Fred SCHLEGEL, Defendant-Appellant.†

Court of Appeals

*No. 86–1989–CR. Submitted on briefs August 13, 1987.—*
*Decided September 17, 1987.*

(Also reported in 415 N.W.2d 164.)

† Petition to review denied. Petition for reconsideration denied.

For the defendant-appellant the cause was submitted on the briefs of *Franklyn M. Gimbel* and *Marna M. Tess-Mattner* and *Gimbel, Reilly, Guerin & Brown,* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Jeffrey M. Gabrysiak,* assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. Fred Schlegel appeals from a judgment convicting him of false swearing. The issues are: (1) whether there was sufficient evidence that Schlegel knew at least one of his statements was false when made and that the statements were inconsistent; and (2) whether the trial court's failure to compel the state to designate which of several statements was false denied Schlegel's right to a unanimous jury verdict. We conclude that the evidence was sufficient to convict, and we see no error in the manner in which the case was submitted to the jury. We therefore affirm.

Schlegel, an investor and real estate developer, was charged with violating sec. 946.32(1)(b), Stats., which makes it a Class D felony to "make[ ] ... 2 inconsistent statements under oath ... under circumstances which demonstrate that [he] knew at least one of the statements to be false when made." The inconsistent statements were alleged to have been made at a supplemental proceeding on February 19, 1982, and in testimony at a John Doe hearing on September 9, 1982, in response to questions concerning Schlegel's ownership of an enterprise known as Lake Terrace, Inc., in late 1979 and early 1980.

The facts are not in dispute. In July, 1979, Schlegel purchased a parcel of real estate in Oneida County owned by Northernaire, Inc. Northernaire also owned a hotel and several other resort-related properties in the area, including a mobile home park called Lake Terrace Estates. A few months later, on November 15, 1979, Schlegel purchased Northernaire. On the same date, he signed incorporation papers for a new corporation, Lake Terrace, Inc. Then, as the new

owner of Northernaire, he deeded Lake Terrace Estates (the real estate) to himself and then to Lake Terrace, Inc. (the corporation). The secretary of state issued a certificate of incorporation for Lake Terrace, Inc. (LTI), on November 29, 1979. From that point on—at least until January 7, 1980—Schlegel owned all 2,200 shares of LTI stock and was secretary of the corporation. On January 7, 1980, Schlegel transferred his LTI stock to others.

Several months later, a construction firm took judgment against Schlegel and commenced supplemental proceedings to collect the judgment. Schlegel was called to testify in those proceedings on February 19, 1982, and was asked on several occasions who owned LTI at the time Lake Terrace Estates was transferred to the corporation (on or about November 15, 1979). Schlegel responded: "I don't know." When asked whether he was an owner of LTI, he answered "I was never owner of Lake Terrace, Inc.," and that he did not have any information as to who owned it. He also testified that he did not know who owned LTI when it was formed, that he never owned any stock in the corporation, and that, while he was secretary of the corporation, he did not know who the directors were.

In September, 1982, Schlegel testified at a John Doe hearing that at the time Lake Terrace Estates was transferred to LTI, he owned LTI and was its sole shareholder. In his words, at that time "[LTI] was me."

## I. SUFFICIENCY OF THE EVIDENCE

We will uphold a jury verdict if there is "any credible evidence [in the record] on which the jury

could have based its decision." *State v. Johnson,* 108 Wis. 2d 703, 712, 324 N.W.2d 447, 451 (Ct. App. 1982). Stated conversely:

> On review of the sufficiency of the evidence, this court will uphold the jury's verdict unless it finds that the evidence, considered most favorably to the State, is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as beyond a reasonable doubt. *State v. Spanbauer,* 108 Wis. 2d 548, 552, 322 N.W.2d 511, 513 (Ct. App. 1982).

### A. *Schlegel's Knowledge of the Falsity of the Statements*

The crux of Schlegel's argument is that because of the delay between the time he signed the incorporation papers on November 15, 1979, and the issuance of the articles by the secretary of state some two weeks later, he "may have been confused about the legal ownership of [LTI] in November of 1979." He contends, without citation to legal authority, that his statements that he did not know who owned the corporation at that time were not false, but were "legally correct" because the corporation did not exist—and thus could not be owned by anyone—until the certificate issued. And he maintains that he cannot be convicted of violation of sec. 946.32(1)(b), Stats., absent proof that he actually knew the falsity of the statement(s).

As indicated, sec. 946.32(1)(b), Stats., requires proof that the offending statement or statements were made "under circumstances which demonstrate that

the [defendant] knew at least one [was] false when made." But state of mind can never be established by direct evidence; it can only be inferred from assessment of a person's acts and statements in light of the surrounding circumstances. *Pfeifer v. World Service Life Ins. Co.,* 121 Wis. 2d 567, 569, 360 N.W.2d 65, 66 (Ct. App. 1984).

Schlegel's arguments emphasize the date of the transfer, November 15, 1979, and suggest that evidence of anything occurring after that date is irrelevant. We disagree. As we have stated, the proof in a case such as this is, of necessity, circumstantial; and we see no reason why the jury could not consider evidence of all the circumstances surrounding Schlegel's involvement with LTI from November, 1979, when the corporation was formed to January, 1980, when he sold his LTI stock.

The jury had before it evidence of Schlegel's statement in the supplementary proceeding that he had never owned any interest in LTI. This statement was contradicted not only by the records of his acquisition and ownership of all of LTI's outstanding stock from the time of its creation in November, 1979, to January 8, 1980, but also by his John Doe testimony that he "owned" LTI at the time the Lake Terrace Estates mobile home park was transferred to LTI. The record also indicates that Schlegel alone signed LTI's articles of incorporation on November 15, 1979. In addition, there was evidence that the Lake Terrace Estates had been appraised at $376,000 in July, 1979, and the jury could infer that Schlegel, a sophisticated businessman, would not transfer such valuable property to a corporation without knowing anything about its ownership.

517

Considering the evidence most favorably to the state, we cannot say that it is so lacking in probative value that no reasonable jury could convict Schlegel of making a statement in the 1982 court proceedings under circumstances which demonstrate that he knew the statement was false when made.

### B. *Evidence of Inconsistency*

Section 946.32(1)(b), Stats., applies to "inconsistent statements" made under circumstances demonstrating that the defendant knew at least one of them to be false. Schlegel argues that his statements cannot be considered inconsistent because the questions asked at the John Doe hearing were not identical in language to those asked at the earlier supplemental proceeding. He claims that there must be a precise identity of questions before a violation of sec. 946.32(1)(b) may be found, citing two federal perjury cases, *Bronston v. United States,* 409 U.S. 352 (1973), and *United States v. Laikin,* 583 F.2d 968 (7th Cir. 1978). We are not persuaded.

First, in both *Bronston* and *Laikin* the statutes involved made it a crime to willfully or knowingly state or subscribe to any material matter which the witness does not believe to be true. 18 U.S.C. secs. 1621(1) and 1623(a). These statutes and sec. 946.32(1)(b), Stats., are dissimilar. Most notably, the federal laws have nothing to do with inconsistent statements. They are perjury statutes. Second, neither case holds that the questions must be "identical," but only that they be "objectively ... the same," *Laikin* at 970, and that they be "precise" in the sense that they may be understood by the witness. *Bronston* at 361–62.

Here, Schlegel testified in one proceeding that he did not know who owned LTI on November 15, 1979, and that he never had any ownership interest in the corporation. At another proceeding, he testified that he owned it—that he himself "was" the corporation—at the time in question. Unlike the defendant in *Bronston,* who gave uncertain and unresponsive answers to ambivalent questions, and the defendant in *Laikin,* who was faced with objectively different questions, Schlegel, an experienced developer and businessman, was testifying in response to straightforward questions about the ownership of stock in his wholly-owned corporation. The concept was uncomplicated and Schlegel's answers were unequivocal. He denied his ownership of the corporation in one hearing and affirmed it in another. His statements, made under oath, were inconsistent with each other and with other undisputed evidence in the record.

## II. UNANIMOUS VERDICT

Schlegel next argues that because the state was never required to "elect" which particular statement or statements were false when made, some jurors could consider one statement, and others another, as untrue. The result, according to Schlegel, would be an unconstitutional non-unanimous verdict.

Schlegel made at least two diametrically opposed statements under oath. First, he denied that he ever had any ownership interest in LTI and testified that he did not know who owned it at the time in question. In later testimony he affirmed his sole ownership of the corporation, a fact confirmed by extrinsic evi-

dence. Neither election, separation, nor a special instruction were necessary to ensure jury unanimity on what Schlegel did—that he made inconsistent statements under circumstances tending to establish that he knew at least one was false when made.

*By the Court.*—Judgment affirmed.