STATE of Wisconsin, Plaintiff-Respondent,

v.

Marvin THOMAS, Defendant-Appellant.

Court of Appeals

*No. 90–1565–CR. Submitted on briefs February 5, 1991.—Decided March 5, 1991.*

(Also reported in 468 N.W.2d 729.)

617

619

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patricia Flood,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *James M. Freimuth,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. Marvin Thomas appeals from a judgment entered on a jury verdict finding him guilty of intimidation of a victim in violation of sections 940.44(1) and 940.45(1), Stats.[1] Thomas had also been charged with armed robbery in connection with the same

---

[1] Section 940.44, Stats., provides in full:

**Intimidation of victims; misdemeanor.** Except as provided in s. 940.45, whoever knowingly and maliciously prevents or dissuades, or who attempts to so prevent or dissuade, another person who has been the victim of any crime or who is acting on behalf of the victim from doing any of the following is guilty of a Class A misdemeanor:

**(1)** Making any report of the victimization to any peace officer or state, local or federal law enforcement or prosecuting agency, or to any judge.

incident, but the jury found him not guilty. Thomas contends that the trial court misconstrued section 940.44(1) and that this deprived him of his constitutional right to have notice of the charge against him. He also contends that his jury's acquittal on the armed robbery charge requires that a judgment of acquittal be entered on the intimidation-of-a-victim charge. We affirm.

## I.

There were three eyewitnesses to the incident that led to both the armed robbery and intimidation-of-a-victim charges: Lee Robinson, Margaret Keys, and Thomas. Robinson testified that in the early morning of May 11, 1988, Thomas rang the door bell to the apartment Robinson shared with Keys. Robinson told the jury that when he answered the door, Thomas "just forced his way on in" and pointed a handgun at him. Robinson described Thomas as being "in a rage like he was going to do something bad." According to Robinson's testimony, Thomas asked for Keys' stepson Eddie Yancey, saying that Yancey had stolen seventy dollars from him. Robinson testified that he asked Thomas "to leave us alone." He also testified that he told Keys to call

---

(2) Causing a complaint, indictment or information to be sought and prosecuted and assisting in the prosecution thereof.

(3) Arresting or causing or seeking the arrest of any person in connection with the victimization.

Violation of section 940.44 is a Class A misdemeanor unless, *inter alia*, "the act [of intimidation] is accompanied by force or violence or attempted force or violence, upon the victim, or the spouse, child, parent, sibling or grandchild of the victim or any person sharing a common domicile with the victim." Section 940.45(1), Stats. In that case, the perpetrator is guilty of a Class D felony. *Ibid.*

the police, but that Thomas, whose gun was pointed at Keys as well, warned her to "[b]e still, . . . unless you want to die," and that if she did not get away from the telephone he would "blow her head off."

Robinson testified that he "figured" that what Thomas "wanted was money" when Thomas did not leave the apartment despite his requests. So, according to Robinson, he said to Thomas: "Well, I got $50. Here, you can have that; just leave us alone." Thomas "snatched" the money from him and then fired a shot into the bedroom door. Robinson explained to the jury that the only reason he gave Thomas the money was because Thomas had a gun.

Keys' testimony was essentially similar to Robinson's, except that she told the jury that Thomas fired the gun early in the confrontation and that when Robinson later told her to call the police, Thomas put the gun to her head and said, "Lady, if you touch that phone, you're dead." She also testified that it was after Thomas had threatened her that Robinson told Thomas, "Just leave the lady alone. I only have $50; you can have that." According to Keys, Thomas took the fifty dollars, but dropped ten as he left the apartment.

Thomas testified that he went to the Robinson/Keys apartment with a gun looking for Yancey because Yancey had "hit me in the back of the head with a board and took my money and tried to run me down with a car." Thomas insisted that he held the gun at his side during the entire time he was in the Robinson/Keys apartment, and denied threatening either Robinson or Keys. He testified that Robinson gave him forty dollars, telling him that he, Robinson, would "deal with" Yancey. Thomas also denied that either Keys or Robinson attempted to call the police. According to Thomas, the gun went off accidently when Robinson "kind of pushed

it aside" after Robinson had given him the money. Thomas admitted, however, that he had lied to the police when they first questioned him about the incident, telling them that he and Yancey had gotten into a fight because he had refused to lend Yancey five dollars to buy cocaine. Thomas also told the police that he went home after the fight, did not go to the Robinson/Keys apartment, did not have a gun, and accused Robinson and Keys of lying to get back at him for having beaten Yancey.

## II.

As relevant to this appeal, a person is guilty of intimidation of a victim when he or she "knowingly and maliciously prevents or dissuades . . . another person who has been the victim of any crime or who is acting on behalf of the victim from . . . [m]aking any report of the victimization to any peace officer or state, local or federal law enforcement or prosecuting agency . . .." Section 940.44(1), Stats. Although Thomas' allegations of trial-court error are interrelated, we must, perforce, analyze them in sequence.

A. *The Jury Instructions.* In the context of this case, the state had to prove two elements beyond a reasonable doubt before Thomas could be convicted of intimidation of a victim under section 940.44(1), Stats.

> First, that Robinson was "the victim of any crime";
> Second, that Thomas "knowingly and maliciously prevent[ed] or dissuade[d]" Keys from calling the police.

Thomas' allegations of error concern the first element—namely, that the trial court failed to sufficiently

instruct the jury as to the "crime" of which Robinson was the victim.

The trial court instructed the jury that "[v]ictim means a person against whom a crime has been committed or attempted in this state," but did not specify or define any particular crime. We agree that this was error. The jury instruction should have specified and defined the crime or crimes underlying the alleged victimization. Additionally, the jury should have been told that it could not find the defendant guilty of intimidation of a victim unless the state proved the elements of the underlying crime or crimes beyond a reasonable doubt. The reason is clear: a jury that is not told which crime is the predicate for the intimidation-of-a-victim charge and is not instructed on the elements of that crime may very well conclude that certain conduct constitutes a crime when it does not. The error in the jury instructions, however, was waived.

Section 805.13(3), Stats., provides that failure to object to a proposed jury instruction "constitutes a waiver of any error in the proposed instructions or verdict."[2] Thomas not only failed to object to the trial court's jury instructions concerning the intimidation-of-a-victim charge but, indeed, affirmatively told the trial court that he had "no objection" to them. We may, nevertheless, reverse the judgment of conviction if we are convinced either "that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." *See* sec. 752.35, Stats.; *Vollmer v. Luety,* 156 Wis. 2d 1, 17–21, 456 N.W.2d 797, 805–806

[2]Section 805.13(3), Stats., is applicable to criminal cases by virtue of section 972.11(1), Stats. *State v. Paulson,* 106 Wis. 2d 96, 101–102, 315 N.W.2d 350, 353 (1982).

624

(1990); *see also Vollmer,* 156 Wis. 2d at 26-27, 456 N.W.2d at 809 (Bablitch, J., concurring for six of the court's seven members).

■

Our power of discretionary reversal under section 752.35, Stats., is coterminous with the Wisconsin Supreme Court's power of discretionary reversal under section 751.06, Stats. *Vollmer,* 156 Wis. 2d at 18-19, 456 N.W.2d at 805. Thus, decisions by the Wisconsin Supreme Court that "interpret the supreme court's power to reverse judgments, notwithstanding waived error, under sec. 751.06 are equally applicable as interpretations of the court of appeals' power to reverse judgments under sec. 752.35." *Id.,* 156 Wis. 2d at 19, 456 N.W.2d at 805. Although the second prong of our power of discretionary reversal under section 752.35 ("that justice has for any reason miscarried") requires "a finding of substantial probability of a different result on retrial," the first prong ("that the real controversy has not been fully tried") does not. *Ibid.* The prerequisites for relief under either prong of section 752.35 are not present in this case.

■

Discretionary reversal on the ground that the real controversy has not been fully tried has occurred in a variety of circumstances, ranging from the erroneous but unobjected-to prejudicial exclusion or admission of evidence, *see State v. Wyss,* 124 Wis. 2d 681, 735, 370 N.W.2d 745, 770-771 (1985), *overruled on other grounds, State v. Poellinger,* 153 Wis. 2d 493, 506, 451 N.W.2d 752, 757 (1990), to those situations where "misunderstanding, cross-purposes, and frustration" have thwarted justice, *Erickson v. Westfield Milling & Elec. Light Co.,* 263 Wis. 580, 589, 58 N.W.2d 437, 441 (1953). There have also been discretionary reversals on the

ground that the real controversy has not been fully tried when an unobjected-to but erroneous jury instruction had a significant adverse impact on the case, *Air Wisconsin, Inc. v. North Central Airlines, Inc.,* 98 Wis. 2d 301, 317–318, 296 N.W.2d 749, 756 (1980), and when incomplete jury instructions precluded the parties from arguing a crucial issue, *Watts v. Watts,* 152 Wis. 2d 370, 379–380, 448 N.W.2d 292, 295–296 (Ct. App. 1989). Here, however, the real controversy has been fully tried.

The jury was presented with two sets of verdicts—one set for each of the two charges. The trial court instructed on the armed robbery charge first, and fully and accurately explained its elements. The trial court then instructed on the intimidation-of-a-victim charge, and told the jury that before it could find Thomas guilty on that charge it would have to find that the state proved beyond a reasonable doubt that, *inter alia,* "Lee Robinson was a victim of a crime." The only underlying crime alleged, or discussed by counsel in their arguments to the jury, was the crime of armed robbery. Indeed, Thomas' appellate brief itself points out that "[n]o other crime was charged, argued, or before the jury which characterized Lee Robinson as a victim." Additionally, and significantly, although the jury was instructed that it "must consider [its] verdicts on each count separately," it was also told that evidence with respect to one charge might be relevant to the other.[3]

Thomas argues that a notation on the substantive instructions concerning the intimidation-of-a-victim charge that the jury took with it into the jury room pursuant to section 805.13(4), Stats., presumably made by a juror during the course of deliberations, indicates jury confusion about which offense the state had to

[3]The trial court instructed the jury that "some evidence in the trial may relate to more than one count."

prove as the underlying crime. Thomas contends that this notation, coupled with his acquittal on the armed robbery charge, reveals that the jury was hopelessly misled by the trial court's instructions and must have found that Robinson was the "victim" of an underlying crime other than armed robbery. The notation was the encirclement of the word "crime" in the instructions' recitation that the state had to prove "that Lee Robinson was a victim of a crime," and, next to the circled word "crime," the pencilled comment "What crime? intimidation or robbery." These notes, however, are not competent evidence.

Rule 906.06(2), Stats., provides, in pertinent part, that:

> [A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict . . . or concerning his mental processes in connection therewith . . . .. Nor may . . . evidence of any statement by him concerning a matter about which he would be precluded from testifying be received.

This is "a rule of incompetency." 3 J.B. Weinstein & M.A. Berger, *Weinstein's Evidence* para. 606[04] p. 606–28 (1990) (interpreting Federal Rule of Evidence 606(b) from which Rule 906.06(2) was adopted without substantive difference). It not only bars jurors' testimony concerning their mental processes, understandings, or misunderstandings, but also bars admission for those purposes of any notes they may have made in the jury room. *Ohanian v. Avis Rent A Car Sys., Inc.,* 779 F.2d 101, 110 (2d Cir. 1985) (applying Federal Rule of

Evidence 606(b)); *see also Schultz v. Catlin,* 78 Wis. 611, 614–615, 47 N.W. 946, 947 (1891) (jurors' affidavits that they misunderstood the judge's instructions properly excluded).

Under the circumstances revealed by the appellate record properly before us, it cannot be said that the case was not fully tried so as to warrant the exercise of our discretionary power of reversal under the first prong of section 752.35, Stats. Additionally, despite Thomas' acquittal on the armed robbery charge, which is discussed in part II B, *infra,* the state's case was very strong, especially in light of what the jury could rationally conclude were contradictions in Thomas' versions of the incident. There is thus not a "substantial probability" that there would be a different result on any retrial of the intimidation-of-a-victim charge. The exercise of our discretionary power of reversal under the second prong of section 752.35 is therefore not permitted. *See Vollmer,* 156 Wis. 2d at 19, 456 N.W.2d at 805.

B. *Sufficiency of the Evidence.* Thomas argues that there was insufficient evidence for the jury to find that the state proved beyond a reasonable doubt that Robinson was a victim of an armed robbery, the only crime underlying the intimidation-of-a-victim charge of which he had notice. In support of this contention, he points to the jury's not-guilty verdict on the armed robbery charge.

In the context of this appeal, a person is guilty of armed robbery if he or she, "by use or threat of use of a dangerous weapon":

> with intent to steal, takes property from the person or presence of the owner by either . . . using force against the person of the owner with intent thereby to overcome his physical resistance or physical power

of resistance to the taking or carrying away of the property; or . . . threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

Section 943.32, Stats. Thomas argues that the state failed to prove the requisite "intent" elements—namely, that he intended to steal money from Robinson and that he intended to act forcibly to overcome Robinson's resistance to the taking and carrying away of Robinson's money.

The standard of appellate review of a jury verdict in a criminal case was recently restated in *Poellinger:*

[A]n appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.,* 153 Wis. 2d at 507, 451 N.W.2d at 757–758 (citations omitted). Viewing the evidence in a light most favorable to the state, we cannot say that, despite his acquittal on the armed robbery charge, no possibility exists that the jury could not have drawn the inference that Thomas' actions that evening, in his quest for reimbursement of money he contends was wrongfully taken from him, did not amount to an "intent to steal" that money from Robinson once it was displayed, or that this

intent to steal was not intentionally effectuated by Thomas' use of the gun. *See State v. Ehlenfeldt,* 94 Wis. 2d 347, 361, 288 N.W.2d 786, 792 (1980) ("[I]ntent . . . may often be inferred from a person's voluntary acts because of the almost self-evident principle of human conduct that people normally intend the natural and probable consequences of their acts."). Indeed, as already noted, Robinson testified that he surmised from Thomas' actions that Thomas wanted money. His analysis was confirmed when Thomas "snatched" the money and *then* left the apartment. Additionally, Robinson told the jury that the only reason he gave the money to Thomas was because Thomas was armed. Thus, what Robinson described as Thomas' "rage like he was going to do something bad" and Thomas' open display of the gun certainly could be taken by the jury as indicative of Thomas' intent to use those means to compel Robinson's acquiescence to the taking and carrying away of Robinson's money. *See State v. Schlegel,* 141 Wis. 2d 512, 517, 415 N.W.2d 164, 166 (Ct. App. 1987) ("[S]tate of mind can never be established by direct evidence; it can only be inferred from assessment of a person's acts and statements in light of the surrounding circumstances.").

Thomas' acquittal on the armed robbery charge does not affect our conclusion that there was sufficient evidence to support a jury finding that Robinson was the victim of an armed robbery. Juries have always had the inherent and fundamental power to return a verdict of not guilty irrespective of the evidence. *United States v. Dougherty,* 473 F.2d 1113, 1130–1137 (D.C. Cir. 1972) (but court should not so instruct jury); *see also Horning v. District of Columbia,* 254 U.S. 135, 138 (1920) (Although "the jury has the power to bring in a verdict

in the teeth of both law and facts," the judge has a duty to properly instruct it on the law.).

> The purpose of a jury is to guard against the exercise of arbitrary power—to make available the common-sense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in prefer-ence to the professional or perhaps over-conditioned or biased response of a judge.

*Taylor v. Louisiana,* 419 U.S. 522, 530 (1975). Thus, the jury here was instructed that if it was satisfied that the state had proven beyond a reasonable doubt all of the elements of armed robbery it "should find the defendant guilty of armed robbery," but that if it was not so satis-fied then it "must find the defendant not guilty of armed robbery." This distinction between "must" and "should" in the criminal law is long-standing in American juris-prudence, *Dougherty,* 473 F.2d at 1135, as it is in Wis-consin, *see,* e.g. Wis J I—Criminal 112, 117 (1962). Indeed, there is authority that this distinction is implicit in the Constitution's Sixth Amendment's right to a trial by jury. *United States v. Hayward,* 420 F.2d 142, 144 (D.C. Cir. 1969). The fact that a not-guilty verdict is inconsistent with another verdict finding the defendant guilty does not require, or by itself permit, reversal of a judgment entered on the finding of guilt, *United States v. Powell,* 469 U.S. 57 (1984); *State v. Mills,* 62 Wis. 2d 186, 191–193, 214 N.W.2d 456, 458–460 (1974), since there is no way of knowing whether the inconsistency was the result of leniency, mistake, or compromise, *Pow-ell,* 469 U.S. at 65.

 C. *Unanimous Verdict.* Every defendant in a criminal case is entitled to a unanimous verdict and to be acquitted unless the state has proven each element of

the crime beyond a reasonable doubt. *Holland v. State,* 91 Wis. 2d 134, 138, 280 N.W.2d 288, 290 (1979), *cert. denied,* 445 U.S. 931. Thus, in this case, all twelve jurors had to find beyond a reasonable doubt that Thomas violated section 940.44(1), Stats., before they could find him guilty of intimidation of a victim. They were so told. We reject, however, Thomas' assertion that the jury must unanimously agree as to which underlying crime resulted in the victimization.

"Unanimity demands that the jury be agreed that the defendant committed a specific act the law prohibited." *Holland,* 91 Wis. 2d at 140, 280 N.W.2d at 291. The specific act prohibited by section 940.44, Stats., is *intimidation*—either of a victim or someone acting on a victim's behalf. Thus, the significant focus is on the alleged victim's *status,* not the mechanism by which he or she became a victim. As *Holland* notes, "[u]nanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime can be committed." *Id.,* 91 Wis. 2d at 143, 280 N.W.2d at 292-293 (upholding a conviction as party to a crime under section 939.05, Stats., even though the jury could have selected any of the three alternatives under that provision: direct commission, aiding and abetting, and conspiracy). Thus, the state's burden of proving beyond a reasonable doubt that there was a "victim of any crime" under section 940.44 is satisfied as long as the jury unanimously agrees that the state has proven beyond a reasonable doubt that there was such a victim even though the jurors might not all agree as to the specific crime that underlies the victimization. *Cf. State v. Giwosky,* 109 Wis. 2d 446, 456-458, 326 N.W.2d 232, 237-239 (1982) (defendant's right to

unanimous verdict not violated when defendant convicted of battery even though some jurors could have predicated verdict on the defendant's throwing of a log at victim while others could have predicated verdict on a subsequent fight between the defendant and victim since "[t]hey are all alternate means used by the defendant to injure" the victim); *State v. Cheers,* 102 Wis. 2d 367, 398–402, 306 N.W.2d 676, 690–692 (1981) (upholding the use of a disjunctive jury instruction that permitted the defendants to be found guilty of armed robbery as long as the jury was satisfied beyond a reasonable doubt that the defendants "either used *or* threatened the imminent use of force" (emphasis in original)). A defendant may not be convicted of an intimidation-of-a-victim charge that is founded on more than one underlying crime, however, unless there is sufficient evidence in the record to support a determination beyond a reasonable doubt that each of the underlying crimes were committed. *See State v. Crowley,* 143 Wis. 2d 324, 329, 422 N.W.2d 847, 849 (1988). Here there was but one underlying crime—armed robbery, and, as we have seen, there was sufficient evidence for the jury to have found beyond a reasonable doubt that Robinson was a victim of that crime.

D. *Fair Notice of the Charge.* As Thomas accurately points out, every defendant in a criminal case has a due-process right to fair notice of the charge. *Cheers,* 102 Wis. 2d at 403, 306 N.W.2d at 692. Although Thomas is also correct when he argues that under the trial court's rationale in sustaining the guilty verdict to the intimidation-of-a-victim charge he would not have had notice of which crime Robinson was a victim, Thomas was, in fact, fully apprised that the underlying

crime was armed robbery.[4] Indeed, as previously noted, Thomas' brief on appeal points out that "[n]o other crime [than armed robbery] was charged, argued, or before the jury which characterized Lee Robinson as a victim." Since Thomas was thus able to fully defend against this charge, he was not deprived of his right to have fair notice of the charges against him.

*By the Court.*—Judgment affirmed.

---

[4]The trial court accepted Thomas' argument that the acquittal on the armed robbery charge necessarily meant that the jury concluded that the state had not proven beyond a reasonable doubt that Robinson was the victim of an armed robbery. Nevertheless, the trial court sustained the verdict of guilt on the intimidation-of-a-victim charge "since . . . there indeed was a crime committed by the defendant, though not armed robbery." The trial court pegged that crime as "reckless use of a weapon" and concluded that it "really supports the integrity of the verdict of guilty on the charge of intimidation of the victim." We disagree. As we have explained, the underlying crime of an intimidation-of-a-victim charge must be specified with particularity and its elements must be fully defined for the jury. Here, the jury was not instructed on "reckless use of a weapon."