State of Wisconsin, Plaintiff-Respondent,
v.
Julian Lopez, Defendant-Appellant.
No. 03-1885-CR.
Court of Appeals of Wisconsin.
Opinion Filed: July 7, 2004.
Before Wedemeyer, P.J., Fine and Curley, JJ.
¶ 1. PER CURIAM.
Julian Lopez appeals from a judgment entered on a jury verdict convicting him of first-degree intentional homicide, as a party to a crime. See Wis. Stat. §§ 940.01(1)(a), 939.05 (1999-2000).[1] He also appeals from orders denying his postconviction motions. Lopez alleges that his trial counsel was ineffective when the lawyer did not discuss the lesser-included offense of felony murder with Lopez or request an instruction on felony murder at the jury-instruction conference. He also claims that the trial court: (1) erred when it denied his ineffective-assistance claim without holding a hearing under State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979); (2) erroneously exercised its sentencing discretion; and (3) violated his due-process rights when it sentenced him based on what he alleges is an unproven factor. We affirm.

I.
¶ 2. Julian Lopez was charged with first-degree intentional homicide while armed with a dangerous weapon, as a party to a crime, for shooting and killing Khaled Jilani. Jilani was shot many times in the right side of his neck and head. The police caught Lopez fleeing from the scene of the crime with a gun in his hand, and subsequently found gunshot residue on his gloves, sweatshirt, and pants. The police also determined that Jilani was shot with the gun that Lopez was holding. Lopez pled not guilty and went to trial.
¶ 3. At the trial, several witnesses implicated Lopez in the shooting. Officer Kim Foti testified that on March 21, 1999, she was on routine patrol when she saw a Buick Skylark drive through a stop sign at the intersection of 29th and Pierce Streets in the City of Milwaukee. According to Foti, as the car rolled onto a curb, she saw a person's head under the passenger side door. Two men, one of whom Foti identified at trial as Lopez, then jumped out of the car and ran away. Foti told the jury that Lopez had a handgun in his right hand when he got out of the car. She chased Lopez and cornered him behind an L-shaped building. After Lopez was cornered, he dropped his gun and she arrested him.
¶ 4. Luis Acevedo testified that, at the time of the trial he had known Lopez for approximately four and one-half years, and claimed that Lopez told him about Jilani's murder. According to Acevedo, Julian Lopez said that he and Arthur Lopez approached Jilani's car to collect money that Jilani owed on a drug debt. Julian Lopez told Acevedo that he and Arthur Lopez got into Jilani's car and began to talk to Jilani. Acevedo testified that, as Arthur Lopez was pistol whipping Jilani, Julian Lopez blurted out Arthur Lopez's nickname. Julian Lopez told Acevedo that he then shot Jilani in the head. Acevedo testified that both men were wearing masks and dressed in black.
¶ 5. Ernesto Lopez testified that Julian Lopez was his uncle. According to Ernesto Lopez, he was playing pool with Julian Lopez when Julian Lopez told him about Jilani's murder. Ernesto Lopez testified that Julian Lopez told him that he, Arthur Lopez, and Loyd Guzior "met up with" Jilani. According to Ernesto Lopez, as soon as Julian and Arthur Lopez got into Jilani's car, Arthur Lopez started to pistol whip Jilani and Jilani lost control of the car. Julian Lopez then reached for the steering wheel of the car and tried to steer it. While this was happening, Julian Lopez accidentally said Arthur Lopez's nickname. Ernesto Lopez testified that Julian Lopez told him that he shot Jilani in the head. According to Ernesto Lopez, Julian Lopez was wearing a mask when he confronted Jilani.
¶ 6. Julian Lopez also testified in his defense. He told the jury that on March 21, 1999, between 2:00 and 2:30 a.m., he was getting ready for work when his nephew, Arthur Lopez, and his niece's boyfriend, Guzior, stopped by his house to see if he wanted to get something to eat. Julian Lopez agreed and left with Arthur Lopez and Guzior. Around 29th Street, Arthur Lopez said something to Guzior, who was driving, about a parked car and Guzior pulled up behind the car. Julian Lopez testified that Arthur Lopez got out of the car, walked over to the other car, and got into it. He claimed that approximately five minutes later he walked over to the other car and saw Arthur Lopez and Jilani fighting. According to Julian Lopez, the car was driving away, so he opened the back door and got in. Julian Lopez claimed that he got into the car to "see what was goin' [sic] on with my nephew."
¶ 7. Julian Lopez testified that Jilani had his foot on the gas pedal of the car, so he reached up from the back seat and tried to put the car in park. Julian Lopez put the car in reverse and, realizing his mistake, then put the car in drive. He claimed that Arthur Lopez and Jilani were fighting the entire time and he told Jilani to put his foot on the brake. After the car stopped, Arthur Lopez and Jilani got out. Julian Lopez told the jury that Arthur Lopez hit Jilani and Jilani fell to the ground. Arthur Lopez and Jilani then got back into the car and, according to Julian Lopez, he saw his nephew reach over and then he heard gunshots. Julian Lopez claimed that he tried to stop Arthur Lopez, but Arthur Lopez fired too fast. He then put the car in drive and rolled it around the corner to park it. Julian Lopez claimed that when the car stopped, Arthur Lopez dropped the gun and ran away. Julian Lopez testified that he then picked up the gun and also ran away. Julian Lopez denied that he shot Jilani and further claimed that he never told Acevedo or Ernesto Lopez that he shot Jilani.
¶ 8. At the jury-instruction conference, the trial court asked Julian Lopez's lawyer if he was going to request any lesser-included-offense instructions. The lawyer told the court that he did not and Julian Lopez indicated that he agreed with his lawyer's decision:
THE COURT: You have discussed the charge [of] first[-]degree intentional homicide, party to a crime, while armed. Is that the instruction you wanted to give?
[JULIAN LOPEZ'S LAWYER]: Yes.
THE COURT: Have you discussed that with him so you're not requesting any type of lesser included?
[JULIAN LOPEZ'S LAWYER]: No.
THE COURT: And you've discussed that, Mr. Lopez, with [your lawyer]?
THE DEFENDANT: That's correct.
THE COURT: You're in agreement with that, is that correct?
THE DEFENDANT: Yes, sir, Your Honor.
The trial court then read the verdict forms and Julian Lopez agreed with their content.
¶ 9. A jury found Julian Lopez guilty of first-degree intentional homicide, as a party to a crime, but did not find him guilty of committing the crime while using a dangerous weapon. The trial court sentenced Julian Lopez to life in prison without parole. It imposed the sentence consecutive to another sentence of life in prison without parole that Lopez had received for killing another man.
¶ 10. Julian Lopez filed a postconviction motion to modify his sentence, alleging, among other things, that the trial court erroneously exercised its sentencing discretion because it did not explain why a sentence of life without parole was warranted. After hearing argument from both parties, the trial court denied the motion.
¶ 11. Julian Lopez also filed a supplemental postconviction motion. He claimed that his trial counsel was ineffective because the lawyer did not discuss the possibility of requesting a lesser-included-offense instruction of felony murder or request such an instruction at the jury-instruction conference. See Wis. Stat. § 940.03 (felony murder). The trial court denied Julian Lopez's motion without a hearing, concluding that the evidence presented at trial did not establish a reasonable basis for acquitting Julian Lopez of first-degree intentional homicide and convicting him of felony murder.

II.

A. Ineffective Assistance of Trial Counsel
¶ 12. The familiar two-pronged test for ineffective-assistance-of-counsel claims requires a defendant to prove: (1) deficient performance; and (2) prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must show specific acts or omissions of counsel that are "outside the wide range of professionally competent assistance." Id. at 690. There is a "strong presumption that counsel acted reasonably within professional norms." State v. Johnson, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 848 (1990).
¶ 13. To prove prejudice, a defendant must show that counsel's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. Strickland, 466 U.S. at 687. In order to succeed, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
¶ 14. Our standard for reviewing this claim involves mixed questions of fact and law. Johnson, 153 Wis. 2d at 127, 449 N.W.2d at 848. Findings of fact will not be disturbed unless clearly erroneous. Id. The legal conclusions, however, as to whether counsel's performance was deficient and prejudicial, present questions of law. Id., 153 Wis. 2d at 128, 449 N.W.2d at 848. We need not address both Strickland prongs if the defendant fails to make a sufficient showing on either one. Strickland, 466 U.S. at 697.

1. Lesser-Included Offense
¶ 15. On appeal, Julian Lopez renews his argument that his lawyer rendered ineffective assistance because he claims that the lawyer did not discuss the lesser-included offense of felony murder with him or request an instruction on felony murder at the jury-instruction conference. He further claims that the trial court erred when it denied his postconviction motion because he claims that the evidence established a reasonable basis for acquitting him of first-degree intentional homicide and convicting him of felony murder. We disagree.
¶ 16. A lawyer is not ineffective if he or she fails to request a lesser-included-offense instruction when the defendant would not have been entitled to the instruction in the first instance. See State v. Van Straten, 140 Wis. 2d 306, 320, 409 N.W.2d 448, 454-455 (Ct. App. 1987).
Whether a lesser-included offense should have been submitted to a jury is a legal matter that we independently determine. The analysis has two steps. First, the requested instruction must concern a crime that is, as a legal matter, a lesser-included offense of the crime charged. Second, if it is, there must be "reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense."
State v. Martin, 156 Wis. 2d 399, 402, 456 N.W.2d 892, 894 (Ct. App. 1990) (citations omitted; quoting State v. Kramar, 149 Wis. 2d 767, 792, 440 N.W.2d 317, 327 (1989)). In making this determination, the evidence must be viewed "in the light most favorable to the defendant." Kramar, 149 Wis. 2d at 792, 440 N.W.2d at 327.
¶ 17. At the outset, we note that the record belies Julian Lopez's claim that his lawyer did not discuss the possibility of requesting a lesser-included offense with him. As we have seen, Julian Lopez specifically told the trial court at the jury-instruction conference that he discussed lesser-included offenses with his lawyer and agreed that he was not going to request any lesser-included-offense instructions. Moreover, in his supplemental postconviction motion, Julian Lopez claimed that both he and his trial lawyer would testify that the lawyer did not discuss any lesser-included offenses with Julian Lopez, but did not provide any evidence, such as affidavits to support this claim. Nevertheless, we turn to the issue of whether Julian Lopez was entitled to an instruction on the lesser-included offense of felony murder.
¶ 18. Julian Lopez alleges that his "wholly exculpatory" testimony, and Acevedo's and Ernesto Lopez's testimony that the shooting occurred after he blurted out Arthur Lopez's nickname show that he "never intended that any murder occur." He argues that this evidence is proof that Arthur Lopez shot Jilani because his identity had been revealed. Julian Lopez also alleges that a jury could have convicted him of the crime of felony murder while committing an armed robbery because Acevedo's testimony shows that Julian and Arthur Lopez approached Jilani to collect a drug debt. We disagree.
¶ 19. A trial court must, upon request, submit a lesser-included offense to the jury "even when the defendant has given exculpatory testimony" if a reasonable view of the evidence, other than the exculpatory portions of the defendant's testimony, "supports acquittal on the greater charge and conviction on the lesser charge." State v. Wilson, 149 Wis. 2d 878, 900, 440 N.W.2d 534, 542 (1989). Thus, consistent with Wilson, we must determine whether Julian Lopez was entitled to the felony-murder instruction by evaluating whether a reasonable view of the evidence, excluding the exculpatory testimony that Julian Lopez offered at trial, would have supported acquittal on the charge of first-degree intentional homicide and a conviction of the lesser-included offense of felony murder.[2]
¶ 20. The elements of first-degree intentional homicide are, that the defendant: (1) caused the death of the victim; and (2) acted with the intent to kill the victim. Wis JI-Criminal 1010. There is no dispute that the shooting caused Jilani's death. Thus, the issue is whether, viewing the evidence in the light most favorable to Julian Lopez, a jury could have doubted the shooter's intent to kill. Intent to kill exists if the actor "either has a purpose to ... cause [death], or is aware that his or her conduct is practically certain to cause that result." Wis. Stat. § 939.23(4).
¶ 21. If we disregard Julian Lopez's exculpatory testimony, we are left with the following evidence: (1) Julian Lopez admitted that he was at the scene of the crime; (2) Foti caught Julian Lopez running away from the scene of the crime with the gun that was used to shoot Jilani; (3) the police found gunshot residue on Julian Lopez's clothing; (4) Acevedo and Ernesto Lopez testified that Julian Lopez told them that he shot Jilani in the head; and (5) at the trial, a forensic pathologist testified that the gun was very close to Jilani's head when the shots were fired, see State v. Morgan, 195 Wis. 2d 388, 441, 536 N.W.2d 425, 445 (Ct. App. 1995) (pointing a gun at a vital part of the victim's body leads to the presumption that the shooter intended to kill). The only scenario that could possibly support a felony-murder conviction would be if: (1) the underlying felony was armed robbery, see Wis. Stat. § 943.32(2); and (2) the victim's death was caused during that underlying crime or attempt to commit that underlying crime, see Wis. Stat. § 940.03. But, as we have seen, if, as Julian Lopez posits, Arthur Lopez shot Jilani, that shooting was first-degree intentional homicide, and, consequently, Julian Lopez would be vicariously liable under the party-to-a-crime statute, Wis. Stat. § 939.05. State v. Zelenka, 130 Wis. 2d 34, 47, 387 N.W.2d 55, 60 (1986) ("In Wisconsin there is no requirement that an aider and abettor share the specific intent required for commission of the substantive offense he aids and abets.").
¶ 22. Julian Lopez also argues that a reasonable jury could acquit him of first-degree intentional homicide because "[a]lthough a verdict was submitted on whether or not [Julian Lopez] committed the charged offense while using a dangerous weapon, the jury did not find this element." Thus, he reasons that "[i]f the jury concluded that there was not evidence beyond a reasonable doubt that [Julian] Lopez was the actual shooter, the jury may just as reasonably have concluded, on the same evidentiary basis, that [Julian] Lopez did not intend that any shooting take place." This argument ignores the fact that Julian Lopez was charged as a party to the crime. "[O]ne who intentionally aids and abets the commission of a crime is responsible not only for the intended crime, if it is in fact committed, but as well for other crimes which are committed as a natural and probable consequence of the intended criminal acts." State v. Asfoor, 75 Wis. 2d 411, 430, 249 N.W.2d 529, 537 (1977). As we have seen, the forensic pathologist's testimony establishes a presumption that the shooter intended to kill Jilani. Thus, regardless of whether Arthur Lopez or Julian Lopez actually shot Jilani, a reasonable jury could have found Julian Lopez guilty of first-degree intentional homicide as a party to the crime. Moreover, jury verdicts in criminal cases may be inconsistent without giving the defendant appellate rights flowing from any such inconsistency. State v. Thomas, 161 Wis. 2d 616, 630-631, 468 N.W.2d 729, 735 (Ct. App. 1991). Accordingly, Julian Lopez's lawyer was not ineffective when he failed to request the lesser-included offense of felony murder and the trial court properly denied Julian Lopez's postconviction motion.

2. Machner Hearing

¶ 23. Julian Lopez also claims that the postconviction court erred when it denied his ineffective-assistance claim without holding a Machner hearing because a hearing was necessary to determine if Lopez's lawyer had a strategic reason for allegedly failing to discuss lesser-included offenses with him. Again, we disagree. A trial court must hold a Machner hearing if the defendant alleges facts that, if true, would entitle the defendant to relief. See State v. Bentley, 201 Wis. 2d 303, 309, 548 N.W.2d 50, 53 (1996). If, however:
"the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing."
Id., 201 Wis. 2d at 309-310, 548 N.W.2d at 53 (quoted source omitted). As we have seen, the record conclusively demonstrates that Julian Lopez is not entitled to relief on his ineffective-assistance-of-counsel claim. Accordingly, the trial court did not erroneously exercise its discretion when it denied Julian Lopez's postconviction motion.

B. Sentencing

1. Sentencing Discretion
¶ 24. Julian Lopez alleges that the trial court erroneously exercised its discretion when it failed to explain why it imposed a sentence of life in prison without parole. He claims that the trial court "identified a number of factors relevant to its determination of a parole eligibility date for the mandatory life sentence, but failed to explain how these factors related to the particular facts of the case." We disagree.
¶ 25. Sentencing is committed to the discretion of the trial court and appellate review is limited to determining whether the trial court erroneously exercised its discretion. State v. J.E.B., 161 Wis. 2d 655, 661, 469 N.W.2d 192, 195 (Ct. App. 1991). A trial court erroneously exercises its sentencing discretion if it imposes a sentence without considering the appropriate factors. McCleary v. State, 49 Wis. 2d 263, 278, 182 N.W.2d 512, 520 (1971). A strong public policy exists against interfering with the trial court's discretion in determining sentences and the trial court is presumed to have acted reasonably. State v. Wickstrom, 118 Wis. 2d 339, 354, 348 N.W.2d 183, 191 (Ct. App. 1984). To obtain relief on appeal, the defendant has the burden to show some unreasonable or unjustified basis in the record for the sentence imposed. Id.
¶ 26. The three primary factors a sentencing court must consider are the gravity of the offense, the character of the defendant, and the need to protect the public. State v. Harris, 119 Wis. 2d 612, 623, 350 N.W.2d 633, 639 (1984). The court may also consider the following factors:
"(1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention."
Id., 119 Wis. 2d at 623-624, 350 N.W.2d at 639 (quoted source omitted). The trial court considers the same factors when determining parole eligibility. State v. Setagord, 211 Wis. 2d 397, 416, 565 N.W.2d 506, 514 (1997). The weight to be given to each of these factors is within the trial court's discretion. Ocanas v. State, 70 Wis. 2d 179, 185, 233 N.W.2d 457, 461 (1975).
¶ 27. An examination of the record shows that the trial court considered the proper sentencing factors. After reciting the factors that it must consider and mentioning the additional factors that it could consider, the trial court specifically considered the gravity of the offense. It noted that it was a "very vicious, aggravated offense[;] the mere fact that the [victim] was shot in the form of ... assassination, illustrates its brutality," and recognized that Julian Lopez endangered the lives of others, including the police officers. Next, the trial court considered Julian Lopez's character. It found that the homicide represented Lopez's involvement in the drug business and reflected "greed [and] revenge." Finally, the trial court considered the need to protect the community, commenting that it was "important ... that the community has a sense of being protected." It concluded that it was appropriate for it to impose a sentence of life without parole to deter others who may consider committing similar crimes. The trial court properly determined Julian Lopez's parole eligibility based on the individual facts and circumstances of the case.

2. Due Process
¶ 28. Julian Lopez also appears to allege that the trial court violated his due-process rights when it relied on an allegedly unproven sentencing factor. At sentencing, the trial court commented:
There's been a number of different people, including this young man, that was caught up and ... apparently ... involved in an enterprise with the sale of drugs and  which this Court[] ... has knowledge of because of the cases that have been ... before the Court.
And, ... I would assume that that's why he's been indicted by ... the federal grand jury. And, quite frankly, appropriately so, because of the enterprise that he was  or is  or was involved with.
Because this court believes at this point, because of the prosecution by the State and Federal government in these two homicides, the Lafamilia gang has ... come to its demise, and appropriately so.
Julian Lopez alleges that the trial court should not have relied on this factor because there is no evidence in the record that he was involved with the La Familia gang. He did not object at sentencing, however, or raise this claim in his postconviction motion. Accordingly, it is waived. See State v. Huebner, 2000 WI 59, ¶ 10, 235 Wis. 2d 486, 611 N.W.2d 727 (plurality opinion) ("Issues that are not preserved at the [trial] court, even alleged constitutional errors, generally will not be considered on appeal.").
By the Court.  Judgment and orders affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 1999-2000 version unless otherwise noted.
[2] The parties do not dispute that felony murder is a lesser-included offense of first-degree intentional homicide.