UNITED STATES of America, Appellee,

v.

David Meade BERNARD, Appellant.

No. 84–5127.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 9, 1985.

Decided March 18, 1985.

John B. Spiers, Jr., Radford, Va. (Spiers & Spiers, Radford, on brief) and Edward M. Jasie, Blacksburg, for appellant.

Larry R. Ellis, Asst. U.S. Atty., Charleston, W.Va. (David A. Faber, U.S. Atty., Charleston, W.Va., on brief), for appellee.

Before HALL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

K.K. HALL, Circuit Judge:

David Meade Bernard appeals his conviction by a jury of possession of marihuana, in violation of 21 U.S.C. § 844(a), and his sentence of one year imprisonment and $5,000 fine. Finding no error, we affirm.

## I.

Beginning about 10:30 a.m., and continuing throughout the day on September 2, 1983, state and federal law enforcement personnel in two helicopters conducted aerial surveillance for marihuana fields in Monroe County, West Virginia. The first helicopter was manned by West Virginia State Police Officers Mitchem, Hatten, and Coburn and an Assistant United States Attorney. A State Police Trooper, two Drug Enforcement Agency ("DEA") Agents, and another Assistant United States Attorney were in the second helicopter. Several law enforcement agents and civilians comprised the ground crew.

This September 2nd surveillance was one of a series of aerial surveillances for marihuana fields in Monroe County. During the week before the instant surveillance, Corporal Mitchem and Troopers Hatten and Coburn had discovered more than thirty such fields. While securing some of those fields, the officers had encountered a variety of dangerous devices installed by the marihuana growers to protect their crops

of contraband. These included ankle and neck-high trip wires, barbed wire stretched across paths at eye level, pit-falls, steel traps, electric fences, and guard dogs, such as Doberman Pinschers. The officers had also confiscated numerous firearms, including loaded weapons left behind in guard towers situated in marihuana fields when the guards abandoned their posts and ran away.

On another occasion approximately a year earlier, Trooper Coburn had found a booby-trap device in Monroe County. That device was attached to a fence post and activated by a trip wire. It was constructed from a rat trap and designed to shoot a 12-gauge shotgun shell. Accordingly, the officers proceeded with caution on September 2nd.

Around 5:00 or 5:30 that day, while the second helicopter was being refueled, Trooper Coburn suggested that the officers in the first helicopter fly over the secluded Trout Run-Back Valley area where a commune had once existed. On the first pass over the area, at an altitude of approximately 3,000 feet, the officers saw two marihuana fields located about one mile apart on adjacent hillsides. They continued their flight path without descending and landed about two ridgetops away where they remained for approximately fifteen to twenty minutes. While on the ground, Trooper Hatten, the pilot of the first helicopter, radioed the pilot of the second helicopter who, in turn, called the ground crew for assistance and adequate manpower to secure both fields. When the second helicopter arrived, both aircraft returned to the area where the marihuana had been sighted.

Upon reaching the area, the helicopters hovered at altitudes of 400 to 500 feet. The officers observed three adults, one child, and three vehicles near what they later discovered was appellant's home. Bernard's residence was located just across a one-lane public road approximately 100 yards from the marihuana field. The officers also saw a clearly worn set of tire tracks leading from appellant's driveway to, and dead-ending at, the marihuana field. Except for the dirt road, the field was encircled by forest and inaccessible. During this second pass over the field, the officers also noted that some of the marihuana plants were missing.

When the terrain prevented the helicopters from landing near appellant's marihuana field, they landed at the other field owned by appellant's neighbor. The two crews armed themselves and proceeded on foot toward the house nearest the neighbor's marihuana field. A Doberman Pinscher began to approach the group but was restrained after the officers issued a warning to its apparent owner. The crew of the second helicopter remained to secure that field while Corporal Mitchem and Troopers Coburn and Hatten, all of whom were armed, walked down the public road to appellant's residence. All of the persons seen from the helicopter had disappeared. Inasmuch as they had observed that some of the plants were missing from this field, the officers feared that the persons seen earlier near the house might be attempting to remove or destroy the marihuana. Accordingly, when they reached the vicinity of appellant's residence, they moved directly away from the residence to the marihuana field. There, they secured the area by checking carefully to ensure that no one was hiding in the brush around the perimeter of the field.

The field contained seventeen marihuana plants about five feet in height and twenty-four marihuana stumps which had been cut straight across with a saw. When they observed sawdust beside each stump, the officers assumed the plants had been recently harvested, possibly since the helicopters first passed over the property.

The officers cut down the remaining plants with a machete. They carried the plants back down the dirt road, crossed the public road, and piled them beside the public road on the lawn adjacent to appellant's driveway near his house, from which point the plants were to be loaded into a vehicle to be brought by the ground crew.

The officers then set about to secure the immediate area by locating the persons they had seen from the air. They first approached the house. Both appellant and his wife came to the door. Trooper Coburn asked appellant who owned the property. Appellant, while inside the house and separated from Trooper Coburn by the screen door, stated that he owned the property on both sides of the public road, pointing across the road in the general direction of the marihuana field. Trooper Coburn then asked appellant to step out on the porch where he advised him of his constitutional rights.

Trooper Coburn next asked appellant if anyone else was in the house, and appellant replied that there was not. The officer then asked the whereabouts of the other adult they had seen from the air, to which appellant responded, "We're the only ones here." Having seen a third adult from the helicopter, Trooper Coburn told the officers, including the ground crew which was then arriving, that someone else was on the property and, for the safety of the officers, ordered them to conduct a protective sweep of the curtilage of appellant's property in search of the missing person.

Officers Mitchem and Hatten walked to the rear of the house and turned in the direction of the barn. As Mitchem and Hatten approached the barn, they could see through a small, open door, approximately four to five feet in height, a number of marihuana plants hanging from low rafters in the barn. The plants were readily visible outside the barn from a distance of five to fifteen feet. After discovering the marihuana hanging in the barn, Officers Mitchem and Hatten continued to search for the missing person.

While the officers conducted the protective sweep, Trooper Coburn explained to appellant that if he did not consent to a search of the outbuildings and residence for the contraband, it would be necessary to obtain a search warrant. They were still engaged in this conversation when one of the officers informed Coburn of the discovery of the marihuana. At about the same time, the missing person was located when appellant's mother-in-law came up the driveway pushing a child in a stroller.

None of the persons were taken into custody inasmuch as appellant's wife was nine months pregnant and due to deliver at any time. Forty-one marihuana plants valued at approximately $82,000 were confiscated.

On September 23, 1983, Bernard was charged with one count of manufacturing, by growing and cultivating, and possessing with intent to distribute marihuana, in violation of 21 U.S.C. § 841(a)(1). He moved to suppress the marihuana plants seized from his property. Following a suppression hearing, the magistrate stated that "[t]he facts in this case present a fairly close question [with] regard [to danger to the State Police]." Nevertheless, the magistrate concluded that there was no reason to suspect that the missing person was armed. He further found that the officers acted unreasonably in not questioning Bernard further as to the whereabouts of the missing person. The magistrate recommended that the twenty-four marihuana plants seized from appellant's barn be suppressed. Pursuant to objections made by both parties, the district court in a *de novo* determination, upheld the protective sweep search on the ground that the officers' fear for their safety was reasonable and denied all of the defense motions to suppress.

The case proceeded to trial, and the jury found Bernard not guilty on the felony charged in the indictment but guilty of the lesser-included misdemeanor offense of possession of marihuana, in violation of 21 U.S.C. § 844(a).

At appellant's sentencing hearing, the district judge observed that:

[Appellant is] an individual of considerable means. It is for that reason that the practice [*sic*] which [he is] engaged is the more reprehensible than it might be for another who would have been in need of such benefits as [Bernard] might have expected to realize from those activities.

The court then sentenced Bernard to the statutory maximum penalty of one year

imprisonment and a $5,000 fine under 21 U.S.C. § 844(a). Bernard appeals.

## II.

On appeal, Bernard raises four contentions. He claims that: (1) the district court erred in not suppressing the twenty-four marihuana plants seized from his barn; (2) the district court erred in allowing DEA Agent Rinehart to testify as an expert on the issue of the weight of the marihuana plants and their product; (3) the evidence was insufficient to support his conviction; (4) and the sentence imposed by the trial judge was based upon improper considerations. We reject each of Bernard's contentions.

The district court found that the warrantless protective sweep of Bernard's curtilage was necessary for the officers' safety and, therefore, within the exigent circumstances exception to the warrant requirement. This finding must be sustained unless clearly erroneous. We conclude that the officers' fear for their safety was reasonable. Our conclusion is based upon the officers' prior experience in securing other marihuana fields; their encounter with the neighbor's Doberman Pinscher; the recently harvested marihuana; the value and commercial nature of the crop; and appellant's evasive response to Trooper Coburn's question inquiring about the whereabouts of the missing person, which was inconsistent with what the officers had seen from the air. The sweep, which consisted of a mere look around the premises, was a minimal intrusion into Bernard's privacy. Under all of the circumstances, we are not "left with the definite and firm conviction that a mistake has been made." *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We hold that the protective sweep did not violate Bernard's Fourth Amendment rights. We further hold that in the course of that sweep, the officers had a right to seize the marihuana hanging in the barn in plain view through the open door. *United States v. Baker*, 577 F.2d 1147, 1152 (4th Cir.), *cert. denied*, 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978).

## III.

Bernard's second contention that the district court erred in allowing DEA Agent Rinehart to testify as an expert on the issue of the weight of the marihuana plants and their products lacks merit. Rinehart testified that the forty-one plants confiscated from appellant's field and barn would have yielded at least one pound of saleable product per plant. The obvious purpose of this testimony was to show that such a large quantity of marihuana was not merely for Bernard's personal consumption, but that he intended to distribute his crop. The jury, however, returned a verdict convicting appellant of the lesser-included misdemeanor offense of simple possession. Quantity of marihuana is not a consideration in cases of simple possession under 21 U.S.C. § 844(a). The verdict itself reveals that the jury did not use the agent's testimony in arriving at its verdict. We hold that the issue of whether the testimony was properly admitted is moot. Moreover, testimony related to charges on which there was an acquittal is generally not harmful even if improperly admitted at trial. *Blassingame v. United States*, 254 F.2d 309, 310 (9th Cir.1958).

## IV.

The facts belie Bernard's third contention that the evidence was insufficient to convict him of simple possession. The jury heard unrefuted evidence that seventeen marihuana plants, ranging in height between five and six feet, were growing in a field cleared out of the forest on appellant's land and about 100 yards from the farmhouse where he lived with his family. In addition, it was uncontradicted that there were twenty-four marihuana stumps in the field and twenty-four marihuana plants similar to those found in the field, hanging in plain view in appellant's barn only a few yards away from his residence.

## V.

Finally, Bernard contends that inasmuch as the district court's sentence is based on the conclusion that he intended to distribute the marihuana he possessed, a conclusion contrary to that reached by the jury, it denies him due process of law. We reject this contention.

 The district judge sentenced Bernard to the maximum punishment allowed by 21 U.S.C. § 844(a). Generally, a sentence, if within the statutory limits, is not subject to review. *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). However, such a sentence may be subject to review if it is imposed not in the informed discretion of the trial judge but "founded at least in part upon misinformation of a constitutional magnitude." *Id.* at 447, 92 S.Ct. at 591.

 In *United States v. Sweig*, 454 F.2d 181 (2d Cir.1972), the defendant was convicted on one count of perjury after a jury had acquitted him on fifteen counts. In sentencing the defendant, the district judge indicated that his deliberations were influenced in part by evidence admitted at trial on counts of which the defendant was acquitted. The Second Circuit upheld the sentence and stated that:

A sentencing judge has very broad discretion in imposing any sentence within the statutory limits, and in exercising that discretion he may and should consider matters that would not be admissible at a trial.... However, just as the sentencing judge may rely upon information as to crimes with which the defendant has been charged but not tried, so here the judge could properly refer to the evidence introduced with respect to crimes of which defendant was acquitted. Acquittal does not have the effect of conclusively establishing the untruth of all the evidence introduced against the defendant. For all that appears in the record of the present case, the jury may have believed all such evidence to be true, but have found that some essential element of the charge was not proved. In fact the kind of evidence here objected

to may often be more reliable than the hearsay evidence to which the sentencing judge is clearly permitted to turn, since unlike hearsay, the evidence involved here was given under oath and was subject to cross-examination and the judge had the opportunity for personal observation of the witness.

*Id.* at 183–84 (citations omitted). *Sweig* has been cited as controlling this issue in Circuits where it has been considered. *United States ex rel Goldberg v. Warden, Allenwood Fed.*, 622 F.2d 60 (3d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1980). *United States v. Bowdach*, 561 F.2d 1160, 1175–76 (5th Cir.1977); *United States v. Cardi*, 519 F.2d 309, 314 n. 3 (7th Cir.1975); *United States v. Atkins*, 480 F.2d 1223, 1224 (9th Cir.1973). *Cf. United States v. Campbell*, 684 F.2d 141, 152–55 (D.C.Cir.1982) (affirming the trial court's sentence based upon evidence introduced with respect to crimes of which the defendant was acquitted but "declin[ing] to pursue *Sweig*, to its ultimate reading."). We find *Sweig* to be persuasive and adopt its reasoning as the law of this Circuit.

 Here, the district judge had a reasonable basis for relying upon the complained of evidence. The judge based his finding that Bernard's forty-one marihuana crop would yield a minimum of twenty pounds of marihuana on the testimony of DEA Agent Rinehart. Defense counsel cross-examined Agent Rinehart. Appellant had the opportunity to introduce his own expert testimony at trial and the opportunity to address the court with regard to this issue at the sentencing hearing. That the court considered the lower yield estimation proffered by appellant is obvious from his reduction of the one-pound per plant ratio suggested by Agent Rinehart to one-half pound per plant ratio finally relied on at sentencing. We see no error.

## VI.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.