NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5320-14T4

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

JOHN N. MAHONEY,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

February 22, 2016

APPELLATE DIVISION

Argued January 25, 2016 — Decided February 22, 2016

Before Judges Fasciale, Nugent and Higbee.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 08-06-0996.

Nancy A. Hulett, Assistant Prosecutor, argued the cause for appellant (Andrew C. Carey, Middlesex County Prosecutor, attorney; Ms. Hulett, on the brief).

David A. Gies, Designated Counsel, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Mr. Gies, on the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

We granted leave to appeal from a June 26, 2015 order denying the State's motion to preclude two deliberating jurors from addressing the court at defendant's sentencing hearing.

The State maintains that it is improper to allow juror participation at such a proceeding. We agree, reverse, and remand for sentencing without input from the jurors.

We hold that a judge may not consider for sentencing purposes any comments from a deliberating juror to identify applicable aggravating or mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b). Consequently, deliberating jurors are not permitted to participate at a defendant's sentencing proceeding. To allow juror participation would unnecessarily create a substantial risk of distracting the jurors from their primary purpose — serving as judges of the facts — and would indubitably undermine the sanctity of the jury's deliberative process in our system of jurisprudence.

## I.

Defendant shot and killed his father. A grand jury indicted and charged defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2) (Count One); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (Count Two); and third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(4) (Count Three). The matter proceeded to trial.

In defense of the charges, defendant presented testimony during the trial that he was a victim of battered child syndrome

because his father had allegedly physically and emotionally abused him. The jury found defendant guilty of Counts Two and Three. As to Count One, the jury found defendant guilty of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a), (c). In returning their verdict, the jury sent the judge an unsolicited handwritten note stating in part, "[w]e the jury . . . agree on the recommendation that [defendant] have significant therapy." The court then scheduled a sentencing date for defendant.

Approximately one week after the verdict, juror number two wrote defendant a letter expressing her heartfelt, overwhelming feelings about defendant, the crimes he committed, and her wish that he have a second chance in life. Defendant responded to juror number two,[1] which prompted her to write defendant a second letter. After expressing her own emotional struggles about the facts of the case, juror number two encouraged defendant to be strong. Juror number two then wrote the judge a letter revealing the mental impressions of the jury and reiterating her firm belief that this was a "very complicated, emotionally difficult case." She ended her letter to the judge asking him to sentence defendant to probation and require defendant to undergo extensive mental health therapy.

---

[1]    We have not been provided with defendant's response.

After the verdict, juror number ten wrote defendant, the judge, and defense counsel. In her letter to defendant, she expressed the mental impressions of the jury and her own struggles and frustration in deliberating with the other jurors. She indicated to defendant she spoke to juror number two and planned to contact defense counsel and write the judge to "see if that will help." In her letter to the judge, juror number ten stated "many of [the jurors] were very conflicted in coming to the decision of [a]ggravated [m]anslaughter." Like juror number two, she expressed to the judge her sincere belief that defendant needed "treatment not punishment." Juror number ten then wrote defense counsel, on behalf of "several jurors[,]" revealing their deliberative mental impressions and indicating they wanted defendant to receive "help as opposed to punishment."

Defense counsel forwarded all the letters to the judge, notifying him jurors two and ten would speak at defendant's sentencing. The State filed its motion to preclude those jurors from addressing the court at sentencing. Defense counsel then sent the judge an email and an attached written statement he received from jurors two and ten. The statement, which the two jurors intended to read at sentencing, revealed the overall mental impressions of the entire jury, indicated that the jury

reached a compromise verdict, and requested the judge to show leniency at sentencing and require defendant to receive psychological help.

In his written decision, the judge acknowledged there was no case on point addressing whether a deliberating juror has the right to speak at a defendant's sentencing. The judge found persuasive language contained in a divided opinion rendered by an appellate court in the State of Wisconsin,[2] and entered the order under review allowing jurors two and ten to speak at defendant's sentencing, provided they did not "discuss or disclose what occurred during the jury deliberations."[3]

On appeal, the State argues that jurors two and ten "have no relevant role" at defendant's sentencing. The State maintains, therefore, that the judge abused his discretion by denying its motion. The State contends essentially that the judge ignored well-settled roles of the jury and the court in our system of jurisprudence.

We review the order permitting the jurors to speak at defendant's sentencing using an abuse of discretion standard.

---

[2]    State v. Marhal, 493 N.W.2d 758 (Wis. Ct. App. 1992).

[3]    The judge planned to interview the jury before sentencing defendant to determine whether they communicated with defendant during the trial. We conclude such interviews are unwarranted as there is no evidence in this record of any such communication.

State v. Blackmon, 202 N.J. 283, 297 (2010).  Our Supreme Court has "recognized implicitly that sentencing courts can and do exercise discretion permissibly in allowing members of a defendant's family or others who appear on defendant's behalf to be heard."  Id. at 300.

## II.

We agree with the State that jurors two and ten have no relevant information to add for consideration by the sentencing judge because they are limited to addressing the evidence presented during the trial; that is, the same evidence that the judge heard.  More importantly, allowing the jurors to speak at defendant's sentencing ignores the primary and important fundamental role of the jury and unnecessarily runs the substantial risk of distracting the jurors and undermining the sanctity of the jury's deliberative process.

It is well settled that "jurors decide the facts in accordance with the law as instructed by the court, and the court determines the punishment to be imposed upon the jury finding of guilt."  State v. Reed, 211 N.J. Super. 177, 184 (App. Div. 1986), certif. denied, 110 N.J. 508 (1988).  Jurors are therefore not informed as to the possible sentence of a defendant.  Ibid.  This rule "is based upon the rationale that informing the jury of the possible sentence would: (1) draw

attention away from their chief function — to judge facts; (2) open the door to compromise verdicts; and (3) confuse the issue or issues to be decided." Id. at 185. The premise of this rule is based on the unique function and role of the jury.

Jurors are judges of the facts. They determine the credibility of witnesses, the weight to attach to the testimony of each witness, and whether the State has proven each and every element of the offenses charged beyond a reasonable doubt. See e.g., State v. Feaster, 156 N.J. 1, 81 (1998) (explaining "it is exclusively within the province of the jury to find fact and evaluate witness credibility"), cert. denied, 532 U.S. 932, 121 S. Ct. 1380, 149 L. Ed. 2d 306 (2001); State v. Anderson, 127 N.J. 191, 208-09 (1992) (acknowledging "each element of the crime must be decided by the jury"). It is the jury's sworn duty to arrive at a just conclusion after considering all the evidence presented during the course of the trial. The jury fulfills that duty by weighing the evidence calmly, without passion, prejudice, or sympathy. This is so because allowing these emotions to influence their decision has the potential to deprive both the State and defendant of a fair and impartial trial by fair and impartial jurors. The jurors' service is complete upon return of a verdict.

Sentencing is not intended for jurors to voice concerns about the verdict or appropriate punishment for a defendant. The time for the jury to focus on the verdict is during deliberations, where the jurors must consult with each other and deliberate after an impartial consideration of the evidence. Jurors are instructed not to surrender their honest conviction as to the weight or effect of the evidence for the mere purpose of returning a verdict. The role of the jury — being judges of the facts — would therefore be significantly undermined by allowing jurors to advocate for or against aggravating or mitigating factors at sentencing.

## III.

A judge's role at sentencing, on the other hand, is well defined and circumscribed. In determining what sentence to impose, the judge "must identify any relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b) that apply to the case" and "[t]he finding of any factor must be supported by competent, credible evidence in the record." State v. Case, 220 N.J. 49, 64 (2014). In arriving at these findings, a judge "should consider whether the individual seeking to be heard on defendant's behalf has information that bears upon an aggravating or mitigating factor." Blackmon, supra, 202 N.J. at 305.

The jury plays no role at sentencing in assisting the judge to identify aggravating and mitigating factors. This is especially so because they have no information relevant to establishing aggravating and mitigating factors other than what they and the judge learned through the evidence adduced at the trial. The only other information they have is derived from their mental impressions developed during the deliberative process, which cannot be revealed.

We fully understand and appreciate the genuine concerns expressed by jurors two and ten. This was a tragic case. There are well-settled safeguards in place, however, to assist the judge in sentencing defendant and making the requisite findings as to applicable aggravating and mitigating factors.

"[A] defendant has the right to allocute, that is to address the court directly, in connection with his or her sentence." Id. at 297-98 (citing State v. Cerce, 46 N.J. 387, 393-95 (1966)). Rule 3:21-4(b) states the "court shall address the defendant personally and ask the defendant if he or she wishes to make a statement in his or her own behalf and to present any information in mitigation of punishment." If a defendant so elects, he or she may speak or his or her counsel may speak on the defendant's behalf. Ibid.; see also Blackmon, supra, 202 N.J. at 298.

Other individuals also have the right to express themselves at sentencing. In 1985, the Legislature passed the Crime Victim's Bill of Rights, N.J.S.A. 52:4B-34 to -38, and soon thereafter victims or family members of murder victims were granted the right to have written statements included in a defendant's presentence report and be advised of the right to do so. N.J.S.A. 2C:44-6; Blackmon, supra, 202 N.J. at 298. In 1991, the Crime Victim's Bill of Rights was amended to grant the crime victim or the victim's family increased rights:

> The Legislature finds and declares that crime victims and witnesses are entitled to the following rights:
>
> . . . .
>
> n. To make, prior to sentencing, an in-person statement directly to the sentencing court concerning the impact of the crime.
>
> This statement is to be made in addition to the statement permitted for inclusion in the presentence report by N.J.S.[A.] 2C:44-6[.]
>
> [N.J.S.A. 52:4B-36(n).]

"[O]ther than defendants, and crime victims or their survivors, there is no absolute right to speak at a sentencing proceeding; instead, permitting others to address the court directly is a matter entrusted to the sentencing court's discretion." Blackmon, supra, 202 N.J. at 305. Our Supreme Court explained:

A-5320-14T4

> In exercising that discretion, courts should be guided by this Court's recognition that they need not entertain mere pleas for mercy and need not permit presentations that are cumulative or that merely repeat previously-submitted written comments. Nor are they required to permit presentations that are scurrilous, vengeful, or inflammatory. <u>Moreover, courts should consider whether the individual seeking to be heard on defendant's behalf has information that bears upon an aggravating or mitigating factor</u>, and may require a proffer consistent with one of those factors from defendant's counsel, electing to limit the grant of permission accordingly.
>
> [<u>Ibid.</u> (emphasis added).]

In some instances, judges have also allowed family members and individuals close to a defendant to speak on his or her behalf at sentencing. <u>See, e.g.</u>, <u>State v. Bieniek</u>, 200 <u>N.J.</u> 601, 605 (2010) (stating the court "heard from [the] defendant's father, grandmother, and aunt"); <u>see also</u> <u>Blackmon</u>, <u>supra</u>, 202 <u>N.J.</u> at 304 (remanding for a statement of reasons as to why the defendant's stepfather was not allowed to speak at the sentencing hearing). In those instances, however, the individuals who spoke at the defendant's sentencing presumably had a close personal relationship with the defendant, or had pertinent information to contribute at sentencing other than, like here, that which is based solely on the evidence introduced during the trial.

Consequently, these safeguards afford the parties ample opportunity to adequately present evidence of relevant aggravating and mitigating factors for the sentencing judge's consideration. Moreover, precluding deliberating jurors from speaking at defendant's sentence would not result in a manifest injustice or otherwise prejudice defendant or the State.

IV.

Although not binding on us, we respectfully conclude that the judge's reliance on the Wisconsin appellate court's opinion in State v. Marhal, 493 N.W.2d 758 (Wis. Ct. App. 1992), is misplaced. In Marhal, the majority's opinion indirectly referenced, in a footnote, the subject of jurors participating during sentencing. Marhal, supra, 493 N.W.2d at 763 n.7. The majority's reasoning was tempered by a well-reasoned concurrence discouraging such practice. Consequently, the issue before us was not squarely addressed by the appellate court in Marhal.

In Marhal, the defendant argued he was denied due process because the judge allowed a juror to speak at sentencing. Id. at 762. The defendant contended that allowing the juror to speak "destroyed the trial judge's impartiality, and resulted in a sentence that was influenced by the juror's comments." Ibid. The juror stated at sentencing that "the vast majority of people on the jury felt that [the defendant] was guilty of first[-]

degree intentional homicide" and that the jury only changed its verdict to the lesser offense because of one persistent juror. Id. at 762-63. The juror opined that the maximum sentence should be given. Id. at 763. However, during the hearing on the defendant's post-conviction motion, the trial court "found as a fact[] that it did not consider those comments at sentencing." Ibid. The appellate court, in a footnote, explained without any meaningful analysis that a sentencing judge may consider a juror's statements so long as the jury's deliberations or mental processes are not revealed. Id. at 763 n.7.[4]

Judge Schudson's concurrence in Marhal correctly cautioned against reading the opinion too broadly, explaining "we have affirmed the decision of the trial court that allowed and then circumscribed its consideration of a juror's comments. This is not to suggest, however, that appellate courts approve juror participation in sentencing." Id. at 766 (Schudson, J., concurring). Judge Schudson explained the danger in allowing jurors to have a role in sentencing, namely that allowing such a role may influence the verdict they reach, causing them to weigh punishments and options rather than simply deciding guilt or

_____

[4] The Marhal court reached this conclusion even though the juror in that case revealed the jury's deliberations and mental processes.

innocence.  <u>Ibid.</u>  Acknowledging that juror participation in sentencing was not the issue in <u>Marhal</u>, Judge Schudson properly noted that "sentence recommendations by jurors would relate to the deliberative process."  <u>Id.</u> at 767.  Judge Schudson concluded that "[the court's] holding . . . should not be interpreted as one that approves or encourages juror participation in sentencing."  <u>Ibid.</u>

Other courts considering this issue have come to the same conclusion as Judge Schudson in <u>Marhal</u>.  In <u>People v. Byer</u>, 394 <u>N.E.</u>2d 632, 642 (Ill. App. Ct. 1979), an appellate court in Illinois rejected the defendant's argument that the judge "erred in refusing to hear the testimony of two jurors who wished to testify on her behalf at the hearing on aggravation and mitigation."  The court properly noted "[i]t is the jury's function to determine guilt and the judge's function to impose sentence.  Because the judge heard all the testimony that was heard by the jurors, there is no reason to believe that they could have added any pertinent information at the hearing on aggravation and mitigation."  <u>Id.</u> at 643.

Likewise, in <u>Parker v. State</u>, 577 <u>S.W.</u>2d 414, 414 (Ark. 1979), the Supreme Court of Arkansas reversed the circuit judge's sentence where the judge "had requested his probation officer to interview members of the jury about what they thought

to be a proper sentence." The court was "unanimously of the opinion that the jurors should not have been questioned about their views, especially after they had separated, had returned to their homes, and had been subjected to the possibility of being influenced by out-of-court occurrences." Ibid.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION